UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-20058-CIV-ALTONAGA/Damian

**SHANE BROWN**,

    Plaintiff,

v.

**ANTHONY MARTINEZ**, *et al.*,

    Defendants.

_____/

## ORDER

This cause came before the Court on Defendant Franck Hugues Papillon's Motion to Dismiss Plaintiff's Complaint [ECF No. 19], filed on June 13, 2023. Plaintiff Shane Brown filed a Response [ECF No. 34]. Papillon did not file a reply, so the Motion is ripe for adjudication. The Court has carefully considered the Complaint [ECF No. 1], the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is denied.

### I.  BACKGROUND

On January 24, 2019, Plaintiff, then an inmate at the Dade Correctional Institution ("DCI"), was standing in line "so he could receive his food." (Compl. ¶¶ 1, 6–7). A DCI correctional officer, Sergeant Upshaw, attempted to remove him from line, "called on her radio[,] and went to pull out her cuffs." (*Id.* ¶ 8 (alteration added)). "[T]he next thing [Plaintiff] knew[,]" another DCI correctional officer, Defendant Anthony Martinez, "came from behind, picked [Plaintiff up,] and propelled him to the ground." (*Id.* (alterations added)). When Plaintiff landed on the ground, "he felt tremendous pain in [his] right knee area." (*Id.* ¶ 9 (alteration added)). Martinez and another

Case 1:23-cv-20058-CMA   Document 39   Entered on FLSD Docket 08/08/2023   Page 2 of 18

CASE NO. 23-20058-CIV-ALTONAGA/Damian

correctional officer "dragged [Plaintiff] to the medical department" (*id.* ¶ 10 (alteration added)), where the on-duty nurse, Nurse Aturero, declared Plaintiff "had no signs of injury" (*id.* ¶ 11).

The following day, January 25, 2019, Plaintiff underwent a medical examination during which he reported to the examining medical attendant that "his 'leg broke[.]'" (*Id.* ¶ 12 (alteration added)). Papillon, "the chief health officer at DCI" (*id.* ¶ 5), evaluated Plaintiff on January 28, 2019, noting Plaintiff "had a hematoma on [his] right leg down the heel[,]" Plaintiff "stated that he could not move his right knee without pain[,]" Plaintiff's "range of motion was decreased[,]" and Plaintiff was experiencing "exquisite tenderness with palpation of the right knee, and anterior sub-patella area" (*id.* ¶ 15 (alterations added)).

Papillon then "ordered x-rays[,]" which were taken on January 31, 2019, "three days after seeing P[apillon] and a week after being injured by M[artinez]." (*Id.* ¶¶ 16–17). That same day, the DCI radiologist, Dr. Yu, "faxed the results of the test with an 'alert' at 9:35 pm." (*Id.* ¶ 18). Dr. Yu noted Plaintiff suffered from a "comminuted lateral tibial plateau fracture that traveled into the proximal tibial metaphysis" and a "comminuted fibula head fracture." (*Id.* ¶ 19). On February 1, 2019, Papillon "signed off on the report" but did not send Plaintiff to the hospital or refer him for orthopedic surgery. (*Id.* ¶ 20). On February 8, 2019, seven days after signing off on the report and over two weeks after the January 24, 2019 injury, Papillon "transferred [Plaintiff] to Larkin Hospital" where he underwent "emergent open reduction internal fixation[.]" (*Id.* ¶¶ 22–23 (alterations added)). Plaintiff alleges the delay in treatment caused "permanent injury [to] his knee." (*Id.* ¶ 24 (alteration added)).

Plaintiff now brings this action against Martinez and Papillon under 42 U.S.C. section 1983 for violation of his Eighth Amendment rights. (*See generally* Compl.). Count I states a claim against Martinez for excessive force, and Count II asserts a claim against Papillon for deliberate

2

indifference to serious medical needs. (*See* Compl. ¶¶ 26–38). In the present Motion, Papillon asks the Court to dismiss Count II for failure to state a claim for relief.

## II. LEGAL STANDARDS

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

## III. DISCUSSION

Papillon argues dismissal is required because Plaintiff fails to plead sufficient facts to satisfy the "stringent requirements" of a deliberate indifference claim (Mot. 1);[1] did not "timely and properly exhaust his administrative remedies" (*id.* 2); insufficiently alleges causation (*see id.*); and did not satisfy Florida's "pre-suit conditions precedent" (*id.* 3). Papillon also requests the Court strike Plaintiff's punitive damages request given the absence of factual allegations to establish willfulness or malice. (*See id.* 2). Plaintiff insists that under Eleventh Circuit precedent, he has adequately pleaded Papillon's deliberate indifference (Resp. 4–5); he exhausted his administrative remedies or, alternatively, exhaustion was waived (*see id.* 6–10); and Florida's pre-suit notice conditions are inapplicable in a section 1983 claim (*see id.* 10–11). Plaintiff attacks Papillon's punitive damages argument as premature. (*See id.* 6).

The Court considers the parties' competing arguments.

### A. Failure to State a Claim

The Court first evaluates Papillon's contention that Plaintiff "failed to allege any facts sufficient to bring a deliberate indifference claim[.]" (Mot. 7 (alteration added)). Papillon describes the Complaint as "as an ill-plead[ed] medical malpractice claim" (*id.* (alteration added)), and contends this case merely involves a medical professional's exercise of professional judgment, which "does not represent cruel and unusual punishment" (*id.* 10 (citation omitted)). Papillon fails to persuade.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment, including deliberate indifference to a prisoner's serious medical needs. *See* U.S. Const. amend. VIII; *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). To allege an Eighth

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

Amendment violation based on a deliberate indifference to a serious medical need, a plaintiff must show: "(1) a serious medical need; (2) [a] defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann*, 588 F.3d at 1306–07 (citation omitted).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citation, quotation marks, and footnote call number omitted). "In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." *Mann*, 588 F.3d at 1307 (citation omitted).

To demonstrate deliberate indifference to a medical need, "a plaintiff must establish that the defendant (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) acted with more than gross negligence." *Wade v. McDade*, 67 F.4th 1363, 1374 (11th Cir. 2023) (emphasis omitted). The "more than gross negligence standard" is "equivalent [to] recklessly disregarding a substantial risk of harm to the inmate." *Id.* at 1375 (alteration added; quotation marks and citation omitted).

Finally, causation requires a link between the injury and the constitutional violation. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007). In other words, the unconstitutional act must be a proximate cause of the plaintiff's injuries. *LaMarca v. Turner*, 995 F.2d 1526, 1538–39 (11th Cir. 1993). The defendant's "personal participation in the constitutional violation" can establish this causal link. *Goebert*, 510 F.3d at 1327 (citation omitted).

Papillon does not dispute that Plaintiff alleges he suffered a serious medical need. (*See generally* Mot.). Nor could he, since the Eleventh Circuit has "found broken bones to constitute a

serious medical need." *Hinson v. Bias*, 927 F.3d 1103, 1122 (11th Cir. 2019) (citing *Brown v. Hughes*, 894 F.2d 1533, 1538–39 (11th Cir. 1990)). Instead, Papillon only takes issue with the deliberate indifference and causation elements of Plaintiff's claim. (*See* Mot. 7–13).

**Deliberate Indifference.** The Court begins with Papillon's first argument, in which he asserts the alleged delay in Plaintiff's medical treatment is, "at worst, the type of inadvertent failure to provide adequate medical care sounding in state tort law that the Supreme Court concluded cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind." (Mot. 11 (quotation marks omitted; citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976))). Plaintiff persuasively rebuts this argument. (*See* Resp. 4–5).

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. "To establish that a health care provider's acts constitute deliberate indifference to a serious medical need, treatment must be so grossly incompetent, inadequate, or excessive as to shock conscience or to be intolerable to fundamental fairness." *Palermo v. Corr. Med. Servs. Inc.*, 133 F. Supp. 2d 1348, 1358 (S.D. Fla. 2001) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)).

Several types of conduct can establish deliberate indifference. For instance, "an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (citations and quotation marks omitted). Similarly, "a delay in treatment can constitute deliberate indifference." *Palermo*, 133 F. Supp. 2d at 1359 (citing *McElligott*, 182 F.3d at 1254; other citation omitted).

A plaintiff can also show deliberate indifference if care is "grossly inadequate[,]" if a medical professional decides "to take an easier but less efficacious course of treatment[,]" or where

"medical care is so cursory as to amount to no treatment at all." *McElligott*, 182 F.3d at 1255 (alterations added; citations omitted). Still, "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment[,]" *Estelle*, 429 U.S. at 107 (alterations added), because "simple medical malpractice does not rise to the level of a constitutional violation[,]" *Wade*, 67 F.4th at 1375 (alteration added; citation omitted).

Plaintiff rightly relies on *Brown v. Hughes* to demonstrate that he properly alleges his deliberate-indifference claim. (*See* Mot. 5 (citing 894 F.2d at 1536–39)). In *Brown*, the plaintiff was attacked by another inmate and told the on-duty correctional officer he believed his foot was broken. 894 F.2d at 1536. The correctional officer did not obtain medical attention for the plaintiff, and after the officer's shift ended, the plaintiff "was able to get the attention of another correctional officer and repeat his request for medical care." *Id.* When the plaintiff finally received treatment, "roughly six hours had elapsed since the fight, and [his] foot had become so swollen that the medical staff could not put a cast on it." *Id.* (alteration added).

The Eleventh Circuit agreed with the plaintiff that "a deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim[,]" *id.* at 1538 (alteration added; citations omitted), and "an unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference[,]" *id.* (alteration added; collecting cases). The reason for this is that deliberate delay in treating a painful injury is akin to a defendant "inflict[ing] the pain [him]sel[f]." *Id.* at 1538 (alterations added).

The Eleventh Circuit has repeatedly — and recently — relied on *Brown* in similar scenarios. *See, e.g.*, *Melton v. Abston*, 841 F.3d 1207, 1222 (11th Cir. 2016) (finding "broken bones . . . are serious medical needs that require attention within hours" (citing *Brown*, 894 F.2d

7

at 1538; other citations omitted)); *Reid v. Streit*, 697 F. App'x 968, 973 (11th Cir. 2017) (citing *Brown*, 894 F.2d at 1538).

Undeterred, Papillon insists Plaintiff's claim is merely a "dispute[] over treatment [that is] insufficient to state an Eighth Amendment claim." (Mot. 10 (alterations added; citations omitted)). In support, Papillon points to *Palermo*, where a court declined to find a doctor was deliberately indifferent by "not refer[ring] [the plaintiff] to a spine specialist after [the doctor] had ordered an x-ray of [the plaintiff's] back." 133 F. Supp. 2d at 1361 (alterations added). Papillon also relies on *Kiley v. Andam*, where the court found that a doctor's cursory examination of a plaintiff, refusal to send him to a spinal specialist, and disagreement with the plaintiff's and nurse's assessments of the plaintiff's injury could not give rise to a finding of deliberate indifference. *See* No. 5:06-cv-86, 2006 WL 3667233, at *5 (N.D. Fla. Dec. 12, 2006).

From Papillon's perspective, Plaintiff — like the plaintiffs in *Kiley* and *Palermo* — was actively undergoing medical treatment, and the decision of *when* to effectuate a particular course of treatment — here, referral to a specialist for surgery — was a medical professional's decision. (*See* Mot. 11–12). This argument, while creative, fails to persuade.

Courts have found deliberate indifference in similar contexts, where a medical professional delayed in providing a particular course of treatment, causing the inmate pain and exacerbating or worsening existing medical issues. *See Rhiner v. Sec'y, Fla. Dep't of Corr.*, 696 F. App'x 930, 932 (11th Cir. 2017) (finding allegations sufficient to show medical staff's deliberate indifference where staff initially treated a patient but did not treat him again for nearly two weeks, only resuming treatment when he filed a grievance; and later ignored his instructions to remove his sutures, resulting in or exacerbating an infection); *McElligot*, 183 F.2d at 1257–58 (holding a jury

8

could infer deliberate indifference where medical professionals knew of a plaintiff's pain and worsening condition yet did nothing to treat the pain or improve the condition).

Taken together, the Complaint sufficiently alleges Papillon's deliberate indifference to Plaintiff's serious medical needs. Papillon knew of Plaintiff's fractures because Papillon "signed off" on the x-ray report indicating the fractures' presence (Compl. ¶ 20); and knew Plaintiff was experiencing "pain and debilitation[,]" yet "refused to provide medical attention and care to ameliorate [Plaintiff's] condition" for a week (*id.* ¶ 22 (alterations added)). Once Plaintiff was transferred to the hospital, he underwent "emergent" surgery to treat his injury. (*Id.* ¶ 23). Taking these facts as true, which the Court must, Plaintiff has stated sufficient facts to show Papillon knew Plaintiff suffered a painful injury requiring surgery yet provided no pain relief or treatment and left Plaintiff to wallow in pain for a week as his injury deteriorated — allegedly causing him permanent injury. (*See generally* Compl.).

***Causation.*** Papillon also makes a brief causation argument, as follows: it was Martinez who caused Plaintiff's injury, and Plaintiff was going to need surgery anyway; so, there is no causal nexus between Papillon and Plaintiff's injury. (*See* Mot. 2–3). This argument mischaracterizes Plaintiff's claim, which is based on Papillon's alleged failure to timely treat Plaintiff's fractures — not on existence of the fractures themselves. (*See* Compl. ¶¶ 32–38).

In short, Plaintiff alleges Papillon failed to provide medical care *after* Plaintiff suffered fractures, which caused Plaintiff unnecessary pain and "permanent injury[.]" (Compl. ¶ 24 (alteration added)). These allegations, taken as true, satisfy the causal nexus requirement between Papillon's conduct and the resulting harm Papillon is allegedly responsible for. *See Goebert*, 510 F.3d at 1329 ("The evidence supports the conclusion that for [the plaintiff's] dire medical need[,]

time was of the essence, and the delay attributable to [the defendant's] deliberate indifference may have caused the loss of her child." (alterations added)).

### B. Exhaustion of Administrative Remedies

Papillon also contends that the Court should dismiss the Complaint because Brown "failed to exhaust his administrative remedies regarding any medical grievance plausibly connected with the allegations in the Complaint." (Mot. 13). This argument fails because the Court determines Papillon has waived any procedural objections to Plaintiff's exhaustion.

Under the Prison Legal Reform Act ("PLRA"), a prisoner cannot bring a section 1983 claim "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA requires 'proper exhaustion' that complies with the 'critical procedural rules' governing the grievance process." *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015) (quoting *Woodford v. Ngo*, 548 U.S. 81, 95 (2006)). But a defendant "waives [his] exhaustion defense[] if [he] does not explicitly rely on the grievance's procedural shortcomings as an adequate and independent ground for denying the grievance at the administrative level." *Whatley v. Smith*, 898 F.3d 1072, 1084 (11th Cir. 2018) (alterations added; emphasis omitted).

Since exhaustion implicates a federal court's power to hear the case, "procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008)). Accordingly, the Eleventh Circuit utilizes a two-part test to determine if a plaintiff has properly exhausted all administrative remedies. *See Whatley*, 898 F.3d at 1082.

First, the court "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Id.* (citation and quotation marks omitted). "If the defendants can establish failure to exhaust

based on the plaintiff's allegations, dismissal of the complaint is appropriate." *Id.* (citation, emphasis, and quotation marks omitted). If the complaint is not due to be dismissed, however, the court must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citations omitted).

To make these factual determinations, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant*, 530 F.3d at 1376 (citations and footnote call numbers omitted). A defendant bears the burden of proving the plaintiff has failed to exhaust his available administrative remedies. *See Turner*, 541 F.3d at 1082.

Chapter 33-103 of the Florida Administrative Code establishes the inmate grievance procedures in the Florida penal system that Plaintiff is required to follow. *See Dimanche*, 783 F.3d at 1207 ("Although federal law sets the exhaustion requirement, state law determines what steps are required to exhaust."). "Exhaustion under [section] 33-103 generally requires three steps: (1) an informal grievance; (2) a formal grievance; and (3) an administrative appeal." *Pavao v. Sims*, 679 F. App'x 819, 821 (11th Cir. 2017) (alteration added).

Prisoners may "skip" "filing an informal grievance for "medical grievance[s]" and immediately file a formal grievance. Fla. Admin. Code § 33-103.005(1) (alteration added). A formal grievance "[m]ust be received no later than 15 calendar days from . . . [t]he date on which the incident or action being grieved occurred if an informal grievance was not filed[.]" *Id.* § 33-103.011(1)(b)(2) (alterations added). An appeal "[m]ust be received within 15 calendar days from the date the response to the formal grievance is returned to the inmate." *Id.* § 33-103.011(1)(c) (alteration added). An extension of these deadlines is available "when it is clearly demonstrated by the inmate . . . that it was not feasible to file the grievance within the relevant time periods and

11

that the inmate made a good faith effort to file in a timely manner." *Id.* § 33-103.011(2) (alteration added).

**Step One**. The parties' versions of events present little conflict. The parties seemingly agree that Plaintiff did not file an informal grievance. (*See* Mot. 16; Resp. 7–8). The parties also agree that a formal grievance related to Papillon's medical treatment of Plaintiff was received on March 4, 2019. (*See* Mot. 16; Resp. Ex. 2, Medical Grievance Package from FDOC [ECF No. 34-2] 5).

The only point of factual contention seems to be whether Plaintiff appealed at all, or if such appeal was timely. Papillon says Plaintiff did not appeal. (*See* Mot. 16). Plaintiff says he did (*see* Resp. Ex. 3, Brown Decl. [ECF No. 34-3] ¶ 13), and includes a copy of his appeal, dated March 12, 2019 with a stamp date of March 22, 2019, and appeal response dated April 10, 2019 (*see generally* Medical Grievance Package from FDOC)). According to Papillon, Plaintiff's March 4 grievance was not timely filed under Florida's procedures. (*See* Mot. 16). Plaintiff disagrees with Papillon's interpretation of the law and argues alternatively that Papillon has waived any procedural objections. (*See* Resp. 7–8). Taking Plaintiff's version of facts as true, dismissal is not warranted because Papillon did not raise Plaintiff's timeliness at the administrative level.

As a threshold matter, Plaintiff's grievance was not filed within 15 days of "[t]he date on which the incident or action being grieved occurred[.]" Fla. Admin Code § 33-103.011(1)(b)(2) (alterations added). It was received March 4, 2019 (*see* Medical Grievance Package from FDOC 5) — 20 days after his surgery, and even longer after Papillon signed off on the x-ray report and the initial injury (*see id.*; Resp. 7–8). Plaintiff does not contend he sought or received an extension of the deadline or was unable to submit a grievance. (*See generally* Resp.).

Plaintiff nevertheless contends that he met the 15-day deadline because he filed his grievance "[a]s soon as practical and within 15-days of [] learning that Papillon allowed him to suffer for a week with multiple fractures[.]" (Resp. 8 (alteration added)). Plaintiff cites *Hayes v. Corizon Health, Inc.*, which supports his contention that the clock should begin to run once an inmate learns of the grounds for the grievance. (*See* Resp. 9–10 (discussing No. 19-cv-97, 2020 WL 6219833, at *5 (N.D. Fla. Sept. 22, 2020), *report and recommendation adopted*, No. 4:19-cv-97, 2020 WL 6206012 (N.D. Fla. Oct. 22, 2020)). *But see Roca-Moreno v. Desouza*, No. 19-cv-23688, 2020 WL 7774726, at *4 (S.D. Fla. Nov. 12, 2020) (rejecting argument that deadline began to run when inmate "knew or reasonably should have known" of act giving rise to grievance, which contradicts express language of the Florida Administrative Code), *report and recommendation adopted*, No. 19-cv-23688, 2020 WL 7770402 (S.D. Fla. Dec. 30, 2020); *Stephens v. Corizon, LLC*, No. 3:20-cv-70, 2021 WL 2981317, at *9 (M.D. Fla. July 14, 2021) (same), *appeal dismissed sub nom. Stephens v. Centurion of Fla., LLC*, No. 22-10063, 2022 WL 2658902 (11th Cir. Mar. 10, 2022).

The Court need not decide this issue, because neither Papillon nor any other prison official raised any procedural defect — including timeliness — in the administrative proceedings. Papillon's March 12, 2019 response to Plaintiff's grievance was solely on the merits, stating "[t]here is no indication that you are not being provided with medical treatment and/or adequate health care services while house [sic] in the infirmary. Based on the above information, your grievance in DENIED." (Resp. Ex. 1, Medical Grievance & Papillon's Response [ECF No. 34-2] 2 (alteration added)). Likewise, the appeal response, although redacted, lacks any ascertainable reference to a procedural defect. (*See* Medical Grievance Package from FDOC 2). Thus, taking Plaintiff's version of events as true, the Court "will only enforce procedural rules that the prison

itself chose to enforce in its own administrative review." *Whatley*, 898 F.3d at 1086. Papillon cannot now rely on a timeliness bar not raised at the administrative level. *See id.*

**Step Two**. The only disputed fact seems to be whether Plaintiff appealed, or did so in a timely manner. Plaintiff offers a sworn declaration that he timely appealed (*see* Brown Decl.), coupled with an appeal and appeal response (*see* Medical Grievance Package from FDOC 2), bearing date stamps that support Plaintiff's contention that his appeal was timely (*see generally id.* (including formal grievance denial dated March 12, 2019 and appeal receipt stamp date of March 22, 2019)).

The only evidence Papillon offers in rebuttal is a printout of Plaintiff's grievance log. (*See generally* Mot., Ex. 1, Formal Grievance Report [ECF No. 19-2]). Putting any hearsay reliability concerns[2] aside, the webpage appears to be merely a search of Plaintiff's "Formal Grievances" — yet the Court can plainly see that this webpage contains a separate tab for "Appeal" proceedings, which Papillon failed to include. (Formal Grievance Report 1). Given the lack of evidence that Plaintiff did not appeal, that the appeal was untimely, or that untimeliness was raised at the appellate level, the Court finds Plaintiff timely appealed the denial of his March 4, 2019 grievance on March 22, 2019.

Considering the resolution of this factual dispute, dismissal is not warranted at step two for the same reasons it was not warranted at step one; Papillon cannot rely on a procedural objection that was not raised at the administrative level. *See Whatley*, 898 F.3d at 1086.

---

[2] Brown objects to the use of this document, contending that Papillon "has only proffered inadmissible hearsay in support of his [M]otion[.]" (Resp. 8 (alterations added)). The Court is not convinced that it should strictly apply the Federal Rules of Evidence to this inquiry.

14

### C. Failure to Comply with Pre-Suit Conditions

Papillon's final argument for dismissal is that Plaintiff did not comply with certain Florida pre-suit conditions. Papillon asserts that Plaintiff's claim "is really a thinly veiled malpractice claim[,]" and Plaintiff did not satisfy the Florida Medical Malpractice Act's pre-suit requirements. (*See* Mot. 17). This argument is unconvincing.

Plaintiff's claim is not a medical malpractice claim. It is a section 1983 claim premised on Papillon's "deliberate indifference to [Plaintiff]'s serious medical need in violation of the Eighth Amendment." (Compl. ¶ 37 (alteration added)). And Papillon cites no authority for the proposition that Florida's Medical Malpractice Act's pre-suit requirements apply in the context of a section 1983 claim arising from an alleged violation of Plaintiff's constitutional right to be free from cruel and unusual punishment; both cases he relies on are inapt. (*See* Mot. 19–20).

Papillon first relies on *Alba v. Montford*, in which the court addressed whether state law provided an adequate alternative remedy for a federal prisoner who brought a *Bivens* claim for deliberate indifference to his medical needs in violation of the Eighth Amendment. (*See* Mot. 19 (citing 517 F.3d 1249 (11th Cir. 2008))). The inmate contended the state remedy was inadequate because he could not comply with certain pre-suit requirements. *See Alba*, 517 F.3d at 1251. The presence of an adequate alternative remedy is inapplicable here because this is a section 1983 claim, not a *Bivens* action, and *Alba* does not suggest that state pre-suit notice requirements are applicable in federal civil rights claims. *See generally id.*

The other case Papillon relies upon, *Gross v. White*, also fails to persuade. (*See* Mot. 19 (citing 340 F. App'x 527, 530 (11th Cir. 2009))). In *Gross*, the plaintiff brought a section 1983 claim and a state-law medical negligence claim; the Eleventh Circuit affirmed the dismissal of the latter because the plaintiff failed to comply with Florida's pre-suit notice requirements. *See* 340

F. App'x at 530. The court made no suggestion that those requirements applied to the plaintiff's section 1983 claim. *See generally id.*

Further, the Eleventh Circuit has determined that a similar Florida pre-suit requirement "constitutes an exhaustion of administrative remedies requirement and is thus inapplicable to section 1983 suits." *Majette v. O'Connor*, 811 F.2d 1416, 1418 (11th Cir. 1987); *see also Schaeffer v. Sch. Bd. of Broward Cnty.*, 69 F. Supp. 3d 1327, 1330 (S.D. Fla. 2014) (rejecting applicability of pre-suit notice requirements to ADA claims).

Because of Papillon's lack of supporting authority and the likelihood that *Majette* forecloses the application of Florida's pre-suit notice requirements, the Court declines to dismiss the Complaint on this ground.

### D. Punitive Damages

Finally, Papillon asks the Court to strike Brown's request for punitive damages. The Court declines to do so.

Federal Rule of Civil Procedure 12(f) permits a court to strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f). "[A]t the motion-to-dismiss stage, a plaintiff need only allege enough facts to raise a plausible entitlement to punitive damages." *Hindsman v. Carnival Corp.*, No. 19-23536-Civ, 2020 WL 13369050, at *2 (S.D. Fla. Aug. 6, 2020) (alteration added; citations omitted).

In section 1983 cases, punitive damages are appropriate "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves callous or reckless indifference to the federally protected rights of others." *Wright v. Sheppard*, 919 F.2d 665, 670 (11th Cir. 1990) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983); other citation omitted).[3] "A finding of deliberate

---

[3] Both parties assert the wrong standard for punitive damages in a section 1983 claim. Papillon cites *Exxon Shipping Co. v. Baker*, for the proposition that "punitive damages [are] limited to cases where a defendant's

indifference to a serious medical need, while establishing liability under [section] 1983, does not necessitate a finding of callous indifference warranting punitive damages." *Washington v. Denney*, 900 F.3d 549, 564 (8th Cir. 2018) (alteration added; quotation marks and citations omitted; collecting cases); *see also Perera-Gonzalez v. Rodriguez*, No. 20-23973-Civ, 2021 WL 2012403, at *4 (S.D. Fla. May 20, 2021) ("According to [the plaintiff], then, allegations sufficient to state a claim for excessive force, by definition, are sufficient to state a claim for punitive damages. The Court disagrees[.]" (alterations added)).

Papillon argues that his "conduct [wa]s not greater than gross negligence." (Mot. 12 (alteration added)). But the Court already reached the opposite conclusion in determining Plaintiff adequately pleaded Papillon's alleged deliberate indifference to his medical needs. (*See* discussion *supra* Section III.A.). Taking the facts alleged in the Complaint as true, Papillon allowed Plaintiff to languish in pain for a week with *zero* medical intervention while Plaintiff suffered from broken bones that required emergent surgery, causing him permanent injury. (*See generally* Compl.). "Whether [Papillon's] acts and omissions are factually enough to warrant an award of punitive damages is an inquiry not suited for determination at the motion-to-dismiss stage[]" and is "certainly not redundant, immaterial, impertinent, or scandalous under Rule 12(f)." *Hindsman*,

---

conduct is 'outrageous, owing to gross negligence, willful, wanton, and reckless indifference for the rights of others, or behavior even more deplorable.'" (Mot. 12 (alteration added; citing 554 U.S. 471, 493 (2008))). But "[t]hese standards are from the torts context; different standards apply to other causes of action." *Exxon*, 554 U.S. at 493 n.10 (alteration added). Plaintiff, in contrast, contends "the Eleventh Circuit follows the physical injury requirement for punitive damages under the PLRA[,]" which is an outdated standard. (Resp. 6 n.2 (alteration added; citing *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007), *overruled by Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021))). In PLRA cases, punitive damages are available even "in the absence of a physical injury[,]" because "[p]unitive damages do not compensate plaintiffs for injuries suffered" but "punish the defendant for his willful or malicious conduct and [] deter others from similar behavior." *Hoever*, 993 F.3d at 1358–59 (alterations added; footnote call number, quotation marks, and citations omitted).

2020 WL 13369050, at *2 (alterations added; citations omitted)). Accordingly, the Court will not strike Plaintiff's request for punitive damages.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant Franck Hugues Papillon's Motion to Dismiss Plaintiff's Complaint **[ECF No. 19]** is **DENIED**. Defendant shall file an answer to Plaintiff's Complaint **[ECF No. 1]** no later than August 22, 2023.

**DONE AND ORDERED** in Miami, Florida, this 8th day of August, 2023.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record